# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

CHRISTINE RAWLES,

      Plaintiff,

v.                                                  Civ. No. 16-1284 GJF

NANCY A. BERRYHILL, *Acting Commissioner of the Social Security Administration*,

      Defendant.

## ORDER

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, With Supporting Memorandum" ("Motion"), filed on July 17, 2017. ECF No. 20. The Commissioner responded on September 14, 2017. ECF No. 22. Plaintiff replied on October 2, 2017. ECF No. 23. Having meticulously reviewed the entire record and the parties' pleadings, the Court finds that Plaintiff's Motion is not well taken and that the Administrative Law Judge's ("ALJ's") ruling should be **AFFIRMED**. Therefore, and for the further reasons articulated below, the Court will **DENY** Plaintiff's Motion.

## I. BACKGROUND

Plaintiff was born on August 4, 1961, in Clovis, New Mexico. Administrative R. ("AR") 70, 412. Plaintiff grew up in a family of fourteen and completed the ninth grade. AR 233, 412. Although she did not obtain a high school diploma, Plaintiff later studied for and received her certification as a certified nurse assistant ("CNA"). AR 48. Plaintiff worked as a CNA until she quit working in 2009. AR 233.

On August 24, 2009, Plaintiff filed her first application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging a disability onset date of August 21, 2009. AR 90. The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration stages, *see* AR 90, and following a *de novo* hearing, an ALJ also denied Plaintiff's claim. AR 90-99. Plaintiff's first claim concluded when the SSA Appeals Council declined review. AR 106-08. Plaintiff elected not to pursue judicial review of that claim.

Plaintiff filed a subsequent application for DIB and SSI on March 6, 2013. AR 217-19. That claim, which forms the basis of the instant appeal, alleged disability beginning on November 16, 2012, based on post-traumatic stress disorder ("PTSD"), chronic obstructive pulmonary disorder ("COPD"), gastroesophageal reflux disease ("GERD"), rhinitis, anemia, weak ankles and knees, hypothyroidism, depression, anxiety, plantar fasciitis, diverticulitis, headaches, and panic attacks.[1] The SSA denied Plaintiff's application initially on June 27, 2013, and upon reconsideration on November 12, 2013. AR 128, 147. At her request, Plaintiff received a *de novo* hearing before ALJ Larry Miller on May 19, 2015, at which Plaintiff, her attorney, and vocational expert ("VE") Ann Neulicht appeared. AR 42-86. On July 6, 2015, the ALJ issued his decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). AR 23-37. Plaintiff appealed to the SSA Appeals Council, but it declined review on February 17, 2016. AR 1-3. As a consequence, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 422.210(a) (2017).

Plaintiff timely filed her appeal with this Court on November 23, 2016. ECF No. 1.

---

[1] Claimants self-report their allegedly disabling conditions, and as a consequence, the ailments claimed are often somewhat vernacular, vague, and non-technical.

## II.    PLAINTIFF'S CLAIMS

Plaintiff advances five grounds for relief.  First, she argues that the ALJ improperly evaluated the opinion of examining consultative psychologist Dr. Jerome Albert, Ph.D.  Pl.'s Mot. 9-11, ECF No. 20.  Second, she alleges that the ALJ impermissibly disregarded moderate limitations identified by two non-examining consultative psychologists.  *Id.* at 11-12.  Third, she contends that the ALJ's RFC assessment is flawed and that the ALJ erroneously evaluated the opinion of examining consulting physician Dr. Everett Bolz, M.D. while crafting the RFC.  *Id.* at 12-17.  Fourth, Plaintiff claims the ALJ erred by failing to conduct a function-by-function assessment of her physical capabilities.  *Id.* at 17-18.  Finally, she asserts that the ALJ's credibility finding is contrary to the evidence and to established law.  *Id*. at 18-20.

## III.    APPLICABLE LAW

### A.  Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[2]  The Court's review of that final agency decision is both factual and legal.  *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.").

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012).  "Substantial evidence is such relevant evidence as a

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review.  20 C.F.R. § 404.981 (2017); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Substantial evidence does not, however, require a preponderance of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court examines "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that [he] has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

## B. Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). At the first three steps, the ALJ considers the claimant's current work activity, the medical

severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App. 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's RFC. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to determine if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing his past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to his past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## IV.    THE ALJ'S DECISION

The ALJ issued his decision on July 6, 2015. *See* AR 20. At step one, he found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of November 16, 2012. AR 25. At step two, the ALJ found Plaintiff to suffer the following severe impairments: (1) obesity, (2) COPD, (3) plantar fasciitis, (4) osteoarthritis of the knee, (5)

hypothyroidism, (6) GERD, (7) diverticulitis, (8) anxiety disorder, (9) depression, and (10) PTSD. AR 25.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 25-28. The ALJ declared at the outset that he had "considered the impact of [Plaintiff's] obesity, as discussed in Social Security Ruling 02-01p . . . [and] the impact on limitation of function including [Plaintiff's] ability to perform routine movement and necessary physical activity within the work environment." AR 26. *See* Social Security Ruling ("SSR") 02-01p, 2002 WL 34686281 (Sep. 12, 2002). The ALJ then proceeded sequentially through Plaintiff's physical impairments, finding first that Plaintiff's COPD did not meet Listing 3.03, as her symptoms were neither sufficiently chronic nor of sufficient frequency to satisfy the Listing. The ALJ also found that Plaintiff's diverticulitis failed to satisfy Listing 5.06, as it had not "caused obstruction of stenotic areas requiring hospitalization" or resulted in anemia, abdominal masses, perineal disease, weight loss, or the need for supplemental nutrition by gastrostomy or catheter. AR 26. The ALJ similarly found that Plaintiff's GERD failed to qualify under Listing 5.03, as it had not resulted in stricture, stenosis, blockage of the esophagus, or weight loss as required by the Listing. The ALJ considered Plaintiff's plantar fasciitis and osteoarthritis of the knee and found neither to qualify as presumptively disabling, as Plaintiff had not "lost the ability to ambulate effectively or perform fine and gross movements" as required by Listings 1.02 and 1.03. AR 26. Lastly, the ALJ found that Plaintiff's hypothyroidism had not resulted in any of complications necessary to qualify under Listing 9.00. AR 26.

The ALJ then turned to Plaintiff's mental impairments, which he considered under Listing 12.04 (affective disorders) and 12.06 (anxiety-related disorders). AR 53. The ALJ

determined the paragraph B criteria of these Listings[3] were not met "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." AR 27. He then explained his reasoning regarding paragraph B's four subparts.

First, the ALJ evaluated Plaintiff's activities of daily living and found her to have only a mild restriction. The ALJ observed that Plaintiff had been able to "maintain her daily care," including feeding, bathing, and clothing herself. AR 27. Additionally, he reported that Plaintiff cooked, drove occasionally, went grocery shopping, vacuumed, did laundry and folded clothes. And although she sat in the back to avoid a panic attack, Plaintiff was able to go to church. AR 27.

Second, the ALJ found Plaintiff to have moderate difficulties in social functioning. In support of this finding, he recounted Plaintiff's testimony "that she was anxious around people," paranoid, distrustful, and had no friends. AR 27. The ALJ further cited to Plaintiff sitting in the back of church to avoid others and the fact she did not go grocery shopping alone. AR 27.

Third, as to Plaintiff's concentration, persistence, and pace, the ALJ found Plaintiff had moderate difficulties. To buttress the finding, the ALJ turned to Plaintiff's testimony that she had panic attacks that engendered shortness of breath and feelings of dread. This testimony corresponded to Plaintiff's clinical presentation, where she "was observed with some symptoms

---

[3] Paragraph B of Listings 12.04 and 12.06 (which was identical at the time in both) describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations must be the result of the mental disorder described in the diagnostic description. To meet either of these two Listings, a claimant must exhibit at least two of the following:
   1. Marked restriction of activities of daily living; or
   2. Marked difficulties in maintaining social functioning; or
   3. Marked difficulties in maintaining concentration, persistence, or pace; or
   4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, §§ 12.04(B), 12.06(B) (2014). On March 27, 2017, the SSA significantly altered the language of these listings.

of anxiety," and "rambled [and] twisted her hair as she spoke." AR 27. But, "[d]espite these difficulties," the ALJ emphasized that Plaintiff "admitted resolution with Ativan and Xanax, and she appeared with fair attention and concentration." AR 27.

Lastly, regarding episodes of decompensation, the ALJ found that Plaintiff "has experienced no episodes of decompensation, which have been of extended duration." AR 27. This corresponded with his finding that the paragraph C criteria of the relevant listings were not met. AR 27.

Because none of Plaintiff's impairments satisfied an applicable Listing, the ALJ moved on to the first phase of step four and assessed Plaintiff's RFC. AR 28-35. "After careful consideration of the entire record," the ALJ determined that Plaintiff:

> [H]ad the residual functional capacity to perform light work as defined in [20 C.F.R. § 404.1567(b)]. However, she requires a sit/stand option which allows her to change from sitting to standing every 45 minutes; [Plaintiff] can do no climbing and frequent balancing, stooping, crouching, kneeling, and crawling; [Plaintiff] cannot work at heights or around dangerous machinery; she cannot work in environments with concentrated exposure to respiratory irritants such as dust, fumes, or smoke; [Plaintiff] has had a decrease in the ability to concentrate on and attend to work tasks to the extent that she can only do simple, routine, repetitive tasks (i.e., can apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations). [Plaintiff] can frequently interact with co-workers and supervisors and never interact with the public. Furthermore, [Plaintiff] is unable to work at jobs requiring complex decision making, constant changes, or dealing with crisis situations.

AR 28.

To develop Plaintiff's RFC, the ALJ relied on three separate grounds. First, the ALJ rendered an adverse credibility finding against Plaintiff, opining that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms are not entirely credible or disabling for the reasons explained in this decision." AR 29. The ALJ supported this

finding with a five-page comprehensive comparison between Plaintiff's testimony and the medical evidence, which concluded with a paragraph summarizing his findings. AR 28-33. In that summary paragraph, the ALJ observed that while Plaintiff alleged disability "due to joint pain, COPD, heel pain, anxiety, depression, and PTSD . . . the evidence does not support disabling limitations." AR 32. She explained that Plaintiff's "depression was treated with Lexapro and Lorazepam and her anxiety was treated with Ativan and Xanax," and as a result, while Plaintiff "often appeared sad . . . she continued to function." AR 32. Furthermore, even while discussing with mental health professionals difficult episodes from her past, Plaintiff "exhibited fair attention and concentration" and "coherent and focused thinking." AR 32.

The ALJ's summary communicated similar reservations about Plaintiff's physical impairments. As to Plaintiff's plantar fasciitis, the ALJ opined that Plaintiff sought the same injections for the condition "every few months" as they seemed to resolve her pain "for some period of time." AR 32. The ALJ also believed that Plaintiff's "breathing problems were mostly attributed to her weight and not COPD." AR 33. She reasoned that Plaintiff had never been hospitalized for the COPD, that Plaintiff's oxygen saturation remained within acceptable ranges, and that the bronchitis and respiratory infections which she was prone to were likely traceable to a sensitivity to pulmonary irritants. AR 33. The ALJ also stressed that Plaintiff failed to complete a pulmonary function test in May 2013 "due to lack of effort" and her "failure to follow directions." AR 33. Regarding Plaintiff's knee pain, the ALJ stated that Plaintiff had good range of motion in both knees, full strength, could squat halfway without help, and reported improved knee pain after being prescribed Ultram and Medrol. Further, Plaintiff's hypothyroidism, GERD, and diverticulitis were all treated with medication "without complication." AR 33. The ALJ noted that, "throughout this time," Plaintiff "remained able to

cook, do some chores, and drive" along with going to church and the store.  AR 33.  These facts ultimately led the ALJ to conclude that "[t]he evidence supports some limitation in functioning but it does [not] preclude all ability to work."  AR 33.

Along with Plaintiff's adverse credibility finding, the ALJ also relied on the medical opinions in the record to determine Plaintiff's RFC.  The ALJ began with the nonexamining consultative physicians, and accorded their opinions limited weight.  AR 34.  He recounted that at the initial stage, Dr. Stephen Levin, M.D., concluded that Plaintiff "could do medium level work with lifting and carrying 50 pounds occasionally and 25 pounds frequently, and standing/walking and sitting six hours in an eight-hour day."  AR 33.  At reconsideration, Dr. Hari Kuncha, M.D., found the same.  AR 33.  The ALJ discounted these opinions, as he believed they did "not acknowledge [Plaintiff's] joint pain, the effect of obesity on her joints, her intermittent heel pain, or her respiratory sensitivities."  AR 34.

The ALJ then evaluated the opinions of the nonexamining consultative psychologists.  He observed that at the initial stage, Dr. James Mendelson, Ph.D., found that Plaintiff "had no restriction in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration."  AR 33.  Dr. Mendelson further reasoned that Plaintiff's "concentration and persistence were sufficient to permit the completion of simple repetitive work[-]like tasks within her medical parameters," but cautioned that she "would benefit from a work[-]like environment that de-emphasized social interactions and provided firm supervision."  AR 33.  If, he opined, "she were to exhibit panic attacks," he concluded that "her behavior would be distracting to the general public and coworkers."  AR 33.

At reconsideration, the ALJ noted that Dr. Sharon Skoll, Ph.D., "found different mental restrictions" than Dr. Mendelson. AR 33. The greater part of the divergence arose from Dr. Skoll's Psychiatric Review Technique ("PRT") determination, where she concluded that Plaintiff "had a mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration." AR 33. Additional differences between the two psychologists' opinions were more nuanced, as Dr, Skoll explained that Plaintiff's "concentration and persistence were sufficient for simple, routine, repetitive tasks," and that she could "interact appropriately with others." AR 33. Nonetheless, she opined that Plaintiff "was best suited for settings with limited interpersonal demands." AR 33.

The ALJ accorded moderate weight to Dr. Mendelson's opinion and "greater weight" to the opinion of Dr. Skoll.[4] AR 34. The ALJ did so based on her finding that Dr. Skoll's opinion "is more consistent with the evidence of record," and specifically with the evidence that Plaintiff's anxiety kept her from leaving the house or driving frequently. AR 34. The prevalence of Plaintiff's anxiety, coupled with her subjective complaints, led the ALJ to find the Dr. Mendelson's assignment of a mild limitation in social functioning was "insufficient." AR 34.

Next, the ALJ assessed the opinion of consultative psychologist Dr. Jerome Albert, Ph.D, who examined Plaintiff on May 21, 2013. AR 34, 412. The ALJ reviewed several of Dr. Albert's findings, beginning with his opinion that Plaintiff "could understand, retain, and follow simple directions," but might "have difficulty sustaining attention to perform routine repetitive tasks." AR 34. The ALJ particularly noted Dr. Albert's conclusions that Plaintiff's mental

---

[4] At this point in his decision, the ALJ mistakenly refers to Dr. Skoll as Dr. Kuncha on two occasions. *See* AR 34. The context of the ALJ's discussion, relating specifically at this point to Plaintiff's mental limitations, makes clear that the ALJ is referring to Dr. Skoll.

impairments "would probably interfere with her ability to concentrate on simple, routine, repetitive tasks," that she "may have difficulty getting along with fellow workers and supervisors," and that she may experience problems "tolerating the stress and pressures associated with day to day work activities." AR 34.

The ALJ assigned little weight to Dr. Albert's opinion, as he found it to be unsupported by the record. Further, the ALJ countered Dr. Albert's position that Plaintiff would have difficulty with routine tasks by noting Plaintiff "has been able to maintain concentration enough to drive short distances, cook, do some household tasks, and attend church weekly, which are all likely routine tasks." AR 34. The ALJ also highlighted that Plaintiff's "mental impairments are adequately addressed with medication," and that Plaintiff "continuously report[ed] decreased anxiety and panic attacks with medication." AR 34. By the ALJ's estimation, whatever "possible exacerbation of symptoms" Dr. Albert worried might result from Plaintiff's exposure to "worry and stress at work" were adequately accounted for in his RFC. AR 34.

Lastly, the ALJ accorded limited weight to the opinion of examining consultative physician Dr. Everett Bolz, M.D. AR 34. On May 16, 2013, Dr. Bolz examined Plaintiff at the behest of the SSA and found her to be "moderately to severely impaired" in the "ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, pushing, and pulling heavy objects as well as the ability to hear or speak." AR 34. The ALJ discounted the opinion, finding it to be "vague and not consistent" with Plaintiff's "relatively normal examination." AR 34. Although the ALJ took account of Plaintiff's limp, her slight wobble while tandem walking, and her swollen knee during the office visit, the ALJ also noted that Plaintiff "arose from a sitting position with little difficulty" and that the examination was otherwise normal. AR 34. Collectively, the examination results led the

ALJ to opine that "Dr. Bolz may have given more weight to [Plaintiff's] subjective complaints than to examination findings." AR 34.

The third and final foundation for Plaintiff's RFC derived from her prior disability application. Under Social Security Acquiescence Ruling ("SSAR") 00-1(4), "an adjudicator must consider a required finding made at a step in the sequential evaluation process for determining disability in the prior claim as evidence and give it appropriate weight in light of all relevant facts and circumstances." 2002 WL 32105983, at *4 (Dec. 19, 2002). Furthermore, the SSAR specifically "applies to a finding of a claimant's RFC." *Id.* In keeping with SSAR 00-1(4), the ALJ reviewed the record from Plaintiff's prior application and reported that on October 19, 2011, the previous ALJ found that Plaintiff "could perform a wide range of light work with postural, environmental, and psychiatric restrictions related to simple tasks and interactions with others." AR 34. That ALJ also found that Plaintiff "could perform light work with a sit/stand option and other nonexertional limitations." AR 34-35.

ALJ Miller assigned the prior ALJ's RFC finding "great weight," as he "found no significant change in [Plaintiff's] residual functional capacity." AR 35. He explained that "the evidence does not support a significant change in functioning," and to the extent changes had occurred since 2011 in Plaintiff's respiratory function, he had accounted for such changes in her RFC. AR 35. The ALJ closed this discussion - and the RFC portion of his decision - by referring to similar accommodations he crafted into Plaintiff's RFC for possible stress and panic attacks. AR 35.

In the second phase of step four, the ALJ identified past relevant work as a certified nurse assistant and mental retardation aide. AR 35. Then, at the third and final phase of step four, the ALJ found that Plaintiff could not return to either of these lines of past relevant work, as the

"requirements of these past relevant jobs exceed[ ] [Plaintiff's] abilities" under the assigned RFC. AR 35.

At step five, the ALJ relied on the testimony of the VE to determine what jobs, if any, Plaintiff could still perform. The VE testified that an individual with Plaintiff's RFC could perform the jobs of office helper, DOT # 239.567-010, photo copy machine operator, DOT # 207.685-014, and small products assembler, DOT # 739.687-030. AR 36. Based on that testimony, the ALJ concluded that "considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 36. Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period and denied her claim. AR 36.

## V. ANALYSIS

As set forth below, Plaintiff has failed to marshal sufficient support from facts or case law to establish that the ALJ applied incorrect legal standards or that his decision is unsupported by substantial evidence. Consequently, her Motion must be denied. The Court's reasoning as to each of Plaintiff's claims will be discussed *seriatim*.

### A. The ALJ Properly Evaluated Dr. Albert's Opinion

Plaintiff begins by alleging that the ALJ's evaluation of Dr. Albert's opinion is fraught with legal error. Pl.'s Mot. 10-12, ECF No. 20. She directs the Court to the ALJ's statement that Plaintiff "could maintain concentration to drive, cook, do some household tasks, attend church weekly, and her 'mental impairments are adequately addressed with medication.'" *Id.* at 10 (quoting AR 34). Plaintiff paints these grounds for discounting the opinion as "legal error," in that they represent "minimal activities over which [Plaintiff] ha[d] a great deal of control." *Id.*

14

(citing *Krauser v. Astrue*, 638 F.3d 1324, 1332 (10th Cir. 2011)).  Further, she asserts that these "supposedly robust daily activities do not diminish the fact that Dr. Albert's opinion was based upon his testing."  *Id.* at 11.  Plaintiff closes by claiming that the ALJ's reasoning was also too vague to constitute substantial evidence.  *See id.* (citing *Lewis v. Berryhill*, 680 F. App'x 646, 647 (10th Cir. 2017) (unpublished)).

The Commissioner responds that "it was entirely appropriate for the ALJ to consider whether Dr. Albert's opinion was consistent" with the record and with Plaintiff's ADLs.  Def.'s Resp. 11, ECF No. 22.  The Commissioner contends that "the ALJ reasonably found Plaintiff's activities indicated greater abilities than opined by Dr. Albert" and supports her position with numerous citations to the record evidencing such incongruities.  *Id.* (citing AR 30, 34, 66-67, 70, 402, 413).  The Commissioner similarly refers to numerous instances in the ALJ's opinion where the ALJ discussed medical records in direct conflict with Dr. Albert's assessment of moderate to severe mental impairments.  *See id.* at 11-12 (citing AR 30, 34, 368, 372, 376, 379,383, 423, 438, 484, 490, 494, 501, 505).  Given this evidence, the Commissioner concludes that "the ALJ reasonably found Dr. Albert's opinion inconsistent with the treatment record."  *Id.*

### 1.    Standard for evaluating medical opinions

Under SSA regulations, an ALJ is required to evaluate every medical opinion in the record, giving varying weight to each opinion "according to the relationship between the disability claimant and the medical professional."  *Hamlin*, 365 F.3d at 1215.  Generally, the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight.  *Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004).  In deciding how much weight to give any source's opinion, the ALJ must consider the length of the treatment relationship and frequency of examination, the

nature and extent of the treatment relationship, whether the opinion is supported by objective medical evidence, and whether the opinion is consistent with the record as a whole. 20 C.F.R. § 416.927(c)(1)-(6) (2016). An ALJ need not explicitly discuss every single factor. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the ALJ must "give good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight" he gave to the opinion "and the reasons for that weight." SSR 96-2P, 1996 WL 374188 at *5 (July 2, 1996). Stated plainly, the reasons must be sufficiently specific to permit meaningful review. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

SSR 96-6p also provides specific guidance on how to consider opinions of consultative examiners, including opinions of psychological consultants. SSR 96-6p, 1996 WL 374180 (July 2, 1996). Specifically, it directs that findings of fact made by a consultative examiner "must be treated as expert opinion evidence of nonexamining sources." *Id*. at *1. ALJs may not ignore these opinions and must explain the weight given to these opinions. *Id.* at *2. Yet, because opinions of consultative examiners are not accorded the same value as treating sources, SSR 96-6p mandates as follows:

> the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.

*Id.*

## 2.      The ALJ's evaluation is both supported and free from error

At its core, Plaintiff's challenge consists of two contentions: (1) that the ALJ committed legal error by relying on impermissible bases for discounting Dr. Albert's opinion, and (2) that the ALJ's reasoning for discounting the opinion was so vague that it cannot constitute substantial evidence sufficient to support the finding.  *See* Pl.'s Mot. 10-11.  In both respects, Plaintiff's claim misses the mark.

As an initial matter, the Court finds no legal error in the ALJ's evaluation of Dr. Albert's opinion.  SSR 96-6p makes clear that an ALJ must explain the weight given to a consultative examiner's opinion.  In this case, the ALJ did exactly that; he assigned little weight to Dr. Albert's opinion and articulated his reasons for doing so.  AR 34.  Those reasons, as detailed above, *supra* pp. 11-12, focused on Plaintiff's extensive ADLs and the fact that Plaintiff's mental impairments were regulated by medication.  AR 34.  Although Plaintiff cites to *Krauser* to intimate that the ALJ's depiction of Plaintiff's ADLs may misrepresent the facts underlying her ADLs, the Court has scrutinized the facts underlying Plaintiff's ADLs and concludes that they do not bear the significance that Plaintiff seeks to ascribe to them.  *See Krauser*, 638 F.3d at 1332 (reversing where the "specific facts" of a plaintiff's ADLs painted a "very different picture" from the general description given by the ALJ).  To the contrary, Plaintiff's ADLs – accurately summarized by the ALJ – represent precisely the type of evidence an ALJ may use when carrying out his affirmative duty to compare a consultative examiner's opinion with the record as a whole to ensure its consistency.  *See Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013); SSR 96-6p, 1996 WL 374180, at *2 (mandating that the opinions of consultative psychologists can be given weight only insofar as they are supported by evidence in the case record).  Moreover, the ALJ's finding that Plaintiff's mental impairments were controlled by medication

exemplifies the kind of "good reason" required to properly evaluate a medical opinion. *See* SSR 96-2P, 1996 WL 374188 at *5. Thus, this portion of Plaintiff's claim fails.

Plaintiff's reliance on *Lewis* is equally unfounded. Despite her belief that the ALJ's rationale was impermissibly vague, a review of the ALJ's opinion relative to *Lewis* vitiates Plaintiff's position. In *Lewis*, the Tenth Circuit faced a straight-forward fact scenario. An ALJ had discounted a treating physician's opinion and offered only *two* justifications. *See Lewis*, 680 F. App'x at 646. These reasons were: (1) that the physician had written the assessment roughly sixteen months after his last examination of the plaintiff, and (2) the assessment had been inconsistent with other medical evidence. *See id.* at 647. The court found no support for the ALJ's second justification, as memorialized in the following passage: "The administrative law judge's second reason is too vague. The judge said that [the physician's] opinion was inconsistent with the medical record. *Which part of the record? The judge didn't say.*" *Id.* (emphasis added).

*Lewis* is easily distinguished from the instant matter. Here, Dr. Albert was not a treating physician, and therefore, the analytical and evidentiary burdens for discounting his opinion were lower than in *Lewis*. *Compare Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (describing the sequential evaluation required under the treating physician rule and the more rigorous process an ALJ must undertake to discount a treating physician's opinion) *with* SSR 96-6p, 1996 WL 374180, at *2 (mandating that the opinions of consultative psychologists can be given weight only insofar as they are supported by evidence in the case record). Additionally, the ALJ here did not discount Dr. Albert's opinion with a blanket statement that his opinion was inconsistent with the record. Rather, the ALJ found Dr. Albert's opinion to be "unsupported by the record," and followed by explaining that Plaintiff's extensive ADLs conflicted with Dr.

Albert's findings of severe mental impairments, as did the Plaintiff's own "continuous[ ] reports" of decreased anxiety and panic attacks with medication. AR 34. Unlike the ALJ in *Lewis*, the ALJ in the instant matter gave "good reasons," tied to the record, which allow this Court to meaningfully review his opinion. *See* SSR 96-2P, 1996 WL 374188 at *5; *see Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a consequence, the Court finds the ALJ's rejection of Dr. Albert's opinion to be supported by substantial evidence and what remains of Plaintiff's first claim to be without merit.

### B. The ALJ Did Not Impermissibly Omit Moderate Limitations

Plaintiff next argues that the "ALJ adopted some, but not all of the moderate limitations found by the state agency doctors." Pl.'s Mot. 11. But, despite referring to said limitations in the plural, Plaintiff mentions only one limitation identified by Dr. Mendelson and Dr. Skoll - that Plaintiff possessed a "moderate limitation" in her "ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* at 11-12. She then cites to *Haga v. Astrue* for the proposition that "a moderate impairment is not the same as no impairment as all." *Id.* at 12 (citing *Haga v. Astrue*, 482 f.3d 1205, 1208 (10th Cir. 2007)). Plaintiff closes by declaring that the ALJ's RFC limitation to simple work "did not cure the ALJ's failure to address all of the mental limitations assessed." *Id.*

The Commissioner responds that the ALJ was under no duty to "parrot" the moderate limitations noted by the nonexamining consultative psychologists. Def.'s Resp. 13 (citing *Chavez v. Colvin*, 654 F. App'x 374, 375 (10th Cir. 2016) (unpublished)). Instead, the Commissioner explains that the psychologists reduced their notations of moderate ratings to a narrative explanation that Plaintiff's "concentration and persistence were sufficient to do simple,

routine, repetitive tasks." *Id.* at 13-14 (citing AR 126, 144). Furthermore, the Commissioner reasons that the ALJ "reasonably accounted for the psychologists' opinions when he found an RFC limitation to simple, routine, repetitive tasks." *Id.* at 14 (citing AR 28; *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016)).

In her Reply, Plaintiff claims that this inquiry is neither controlled by *Smith* nor *Vigil v. Colvin*, 805 F.3d 1199 (10th Cir. 2015). Pl.'s Reply 3, ECF No. 23. She maintains that the relevant moderate limitation – the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" falls outside the holdings of both cases. *Id.* at 2-3. In her words, "*Smith* and *Vigil* addressed moderate limitations in other areas, such as concentration, which can be accounted for by a limitation to simple work." *Id.* at 3.

Contrary to Plaintiff's assertions, *Vigil* and *Smith* categorically foreclose this claim. In 2015, *Vigil* held it is not always necessary for the ALJ to include specific limitations in the RFC for concentration, persistence and pace. *Vigil*, 805 F.3d at 1203-04. *Vigil* additionally concluded that the ALJ adequately accounted for moderate limitations in concentration, persistence and pace by limiting the plaintiff to unskilled work. *Id.* It noted that unskilled work generally requires only the following: (1) understanding, remembering, and carrying out simple instructions; (2) making judgments that are commensurate with the functions of unskilled work – *i.e.*, simple work-related decisions; (3) responding appropriately to supervision, co-workers and usual work situations; and (4) dealing with changes in a routine work setting. *Id.* (quoting SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)).

In 2016, *Smith* ratified the *Vigil* holding that "an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith*, 821

F.3d at 1269 (citing *Vigil*, 805 F.3d at 1204). *Smith* involved a review of an ALJ's RFC determination based on a non-examining physician's notation of nine nonexertional limitations that sounded in the categories of (1) sustained concentration and pace, (2) social interaction, and (3) adaptation. *Id.* at 1268. Notably, one of these nonexertional limitations was *the same at issue here* – the ability to complete a normal workday or workweek without interruption from psychologically based symptoms. *See id.* When reducing these limitations to her RFC narrative, the physician omitted the majority of the nine and recommended instead that the claimant "could (1) engage in work that was limited in complexity and (2) manage social interactions that were not frequent or prolonged." *Id.* The ALJ adopted the physician's recommendation, and found that the claimant "(1) could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks." *Id.* at 1269. "Through these findings," the Tenth Circuit held, "the [ALJ] incorporated the functional limitations of [the claimant's] moderate nonexertional limitations." *Id.* *Smith* reasoned that the "notations of moderate limitations served only to aid [the physician's] assessment of residual functional capacity." *Id.* at 1269 n.2. Correspondingly, the Tenth Circuit explained that the court's function is not to compare the ALJ's findings to a physician's "notations of moderate limitations," but rather, to compare the ALJ's findings to the physician's opinion. *Id.*

In the instant matter, the Court finds that the moderate limitation in question has been properly incorporated into Plaintiff's RFC. Just as in *Smith*, Dr. Mendelson and Skoll chose to incorporate Plaintiff's moderate limitation in the ability to complete a normal workday or workweek without interruption from psychologically based symptoms into their Mental Residual Functional Capacity Assessment ("MRFCA") narratives. AR 126, 144. Dr. Mendelson did so by opining that Plaintiff's "concentration and persistence are sufficient to permit the completion

21

of simple and repetitive work[-]like tasks within her medical parameters." AR 126. Dr. Skoll echoed that finding, concluding that Plaintiff's "concentration and persistence are sufficient for SRRTs [simple, routine, repetitive tasks]." AR 144. The ALJ then integrated Dr. Mendelson and Dr. Skoll's narratives into Plaintiff's RFC, which limited Plaintiff to light work with the following mental limitations:

> [Plaintiff] has had a decrease in the ability to concentrate on and attend to work tasks to the extent that she can only do simple, routine, repetitive tasks (i.e., can apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations). [Plaintiff] can frequently interact with co-workers and supervisors and never interact with the public. Furthermore, [Plaintiff] is unable to work at jobs requiring complex decision making, constant changes, or dealing with crisis situations.

AR 28. Based on this transposition of the psychologists' notation of the above moderate limitations into their MRFCA narratives, and from those MRFCA narratives into Plaintiff's RFC, this Court can find no foundation for Plaintiff's allegation of error. To the contrary, the above clearly evinces that the moderate limitation identified by Dr. Mendelson and Dr. Skoll is indeed represented in Plaintiff's RFC, even if the verbiage is not entirely synchronous. *See Chavez*, 54 F. App'x at 375 (holding that an ALJ is not required to parrot a physician's notations of moderate limitations) (unpublished).

### C. The ALJ's RFC Determination Is Supported by Substantial Evidence and His Evaluation of Dr. Bolz's Opinion Is Free from Error

Plaintiff's third claim presents a muddled challenge. The majority of her six-page exposition is devoted to a recitation of evidence which she apparently assembles to demonstrate that "the evidence supports [Plaintiff's] claims of limitations in walking and standing." Pl.'s Mot. 12. But Plaintiff makes only a single, discrete, discernable allegation of error in this section when she contends that the "ALJ improperly rejected the opinion" of consultative examiner Dr.

Everett Bolz, M.D. *Id.* at 13. She argues that the ALJ both impermissibly "played doctor" when he discounted Dr. Bolz's opinion, and that he erred by failing to re-contact Dr. Bolz to clarify his findings. *Id.* at 14-16. Plaintiff then retreats back into general attacks on her RFC, and cites to evidence of her breathing problems, obesity, and fatigue that she also believes undercut the ALJ's RFC finding. *Id.* at 16-17.

The Commissioner responds that the ALJ "reasonably considered Dr. Bolz's opinion, along with other record evidence, and found that Plaintiff could meet the standing and walking requirements for light work." Def.'s Resp. 14. She provides over two dozen record citations to counter Plaintiff's claims of insufficient support for her RFC, and further documents the reasons why the ALJ's discounting of Dr. Bolz's opinion was permissible. *See id.* at 15-16. She closes by directing the Court to the regulation which makes clear the ALJ did not need to re-contact Dr. Bolz to clarify his findings. *Id.* at 17 (citing 20 C.F.R. § 404.1520b(b) (2017)).

### 1. The ALJ Properly Evaluated Dr. Bolz's Opinion

Before proceeding to Plaintiff's more amorphous RFC challenge, the Court can dispense with the attack on Dr. Bolz's evaluation. As detailed above, *supra* pp. 12-13, the ALJ assigned limited weight to the opinion of examining consultative physician Dr. Everett Bolz, M.D. AR 34. Plaintiff argues that certain observations from Dr. Bolz's examination, including her limp, her slight wobble during tandem walking, and her swollen knee preclude the ALJ from finding that the examination was "relatively normal" or, more importantly, from discounting the opinion. *See* Pl.'s Mot. 14; AR 34. These observations, however, have no such preclusive effect. Rather, the ALJ weighed them *in conjunction with* the facts that Plaintiff rose from a seated position with little difficulty, could squat halfway and rise without support, had full 5/5 strength in her legs, and demonstrated good heel and toe walking. AR 31-32, 403-04. Considering these

observations as a whole, the ALJ found Dr. Bolz's conclusion that Plaintiff was "moderately to severely impaired" in her ability to bend, stoop, lift, walk, crawl, squat, carry, travel, push, and pull heavy objects to be "vague and not consistent" with Plaintiff's "relatively normal examination." AR 34. The ALJ further remarked that "Dr. Bolz may have given more weight to [Plaintiff's] subjective complaints than to examination findings." AR 34.

The ALJ's evaluation of Dr. Bolz's opinion is free from error. Plaintiff's only colorable claims of such error are that the ALJ "played doctor" by discounting Dr. Bolz's opinion and that he erred by failing to re-contact Dr. Bolz. Neither convinces the Court. First, the ALJ complied with SSA rulings and case law by providing "good reasons" for discounting Dr. Bolz's opinion, tied to the record, which allow this Court to meaningfully review the decision. *See* SSR 96-2P, 1996 WL 374188 at *5; *see Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The ALJ did not play doctor, but rather explained his rationale for discounting Dr. Bolz's extreme limitations. That Plaintiff disagrees with those reasons neither surprises nor merits reversal. And, although Plaintiff would have this Court construct a duty for the ALJ to re-contact Dr. Bolz, no such affirmative duty exists under the relevant regulation, and the ALJ committed no error by failing to re-contact Dr. Bolz. *See* 20 C.F.R. § 404.1520b(b) (defining what constitutes incomplete or inconsistent evidence, and detailing the circumstances where an ALJ may permissibly re-contact a medical source for clarification).

In sum, the ALJ supported his evaluation of Dr. Bolz's opinion with substantial evidence and avoided legal error in doing so. Therefore, to the extent Plaintiff's claim attacks Dr. Bolz's evaluation, the claim is denied.

2.      **The ALJ's RFC Finding on Standing and Walking Is Supported by Substantial Evidence**

What remains of Plaintiff's third claim sounds outside the Court's province.  This Court is prohibited from reweighing evidence, irrespective of whether Plaintiff submits one sentence or six pages in support.  *See Lax*, 489 F. 3d at 1084 ("[W]e will not reweigh the evidence or substitute our judgment for the Commissioner's.").  Rather, the only inquiry permitted to this Court is a review for substantial evidence.  *See Maes v. Astrue*, 522 F.3d at 1096.  And notwithstanding the volume of support marshaled by Plaintiff, the evidence aggregated and analyzed by the ALJ is sufficient that "a reasonable mind might accept" it as adequate to support the RFC conclusions related to Plaintiff sitting and walking.  *See Langley*, 373 F.3d at 1118; AR 28-34.  *See also* Def.'s Resp. 15-16.  Plaintiff's belief that her body of evidence "supports . . . limitations in walking and standing" is irrelevant.  *See* Pl.'s Mot. 12.  Plaintiff's evidence may very well do so, but it does not so completely overwhelm the ALJ's well-supported position as to vitiate the substantial quality of the evidence.  *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.  Consequently, the Court denies the remainder of Plaintiff's third claim.

D.      **No Function-by-Function Analysis Was Necessary**

Plaintiff's fourth allegation of error is an odd corollary to her attack on the ALJ's RFC finding.  In this instance, while contemporaneously acknowledging there is "no requirement" for an ALJ to perform a function-by-function analysis, Plaintiff nevertheless argues that her "RFC would be more conducive to review" if the ALJ had included one.  Pl.'s Mot. 17.  Plaintiff reasons that because of her "foot and knee pain, her ability to walk and stand is not clear from the RFC finding, because the ALJ failed to discuss those functions separately."  *Id.*

Here, Plaintiff answers her own challenge. There is no requirement for a function-by-function analysis in governing regulations or case law, and nothing about this case justifies a departure from the mean. Furthermore, this challenge presumes that the ALJ overlooked Plaintiff's alleged limitations and standing and walking, which he did not. *See* AR 32-33. In fact, the ALJ addressed both Plaintiff's foot and knee pain, making clear that he believed the record did not support the degree of limitation she claimed. *See* AR 32-33 (noting Plaintiff's plantar fasciitis was resolved periodically by injections, and that Plaintiff had full strength in her knees and pain relief from medication). Accordingly, when the ALJ restricted Plaintiff to light work without further comment on her ability to stand or walk, he allowed that Plaintiff could perform whatever standing and walking requirements exist in the regulatory definition of light work. Per SSR 83-10, "light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." 1983 WL 31251, at *5-6 (Jan. 1, 1983). Thus, it does not surprise that in the hypothetical propounded to the VE, the ALJ asked the VE to consider an individual that could stand and walk for a total of six hours in an eight-hour day. *See* AR 76. The ALJ clearly believed Plaintiff could stand and walk to the limit of the regulatory definition of light work, and no further individuated analysis of function was required. The Court denies Plaintiff's fourth claim.

### E.    The ALJ's Credibility Finding Is Supported by Substantial Evidence

In her last claim, Plaintiff asserts that the ALJ's adverse credibility finding is "contrary to the evidence and the law." Pl.'s Mot. 18. She complains that the "vague" analysis provided by the ALJ fails to comport with the three-phase analysis set forth in *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). *See id.* Plaintiff further contends that the ALJ neither properly considered her mental impairments nor analyzed her obesity under SSR 02-01p. *See* Pl.'s Mot 18-19.

The Commissioner responds that "the ALJ identified a number of valid reasons for discounting Plaintiff's complaints," and these "were supported by substantial evidence." *Id.* at 19. As one example, she relates that while "Plaintiff claimed very limited activities and said she did not drive," the ALJ noted that "Plaintiff drove herself to the market and to church." *Id.* at 20 (citing AR 30, 33, 66-67, 413). The Commissioner directs the Court to similar instances throughout the ALJ's opinion where he contrasts Plaintiff's reports of disabling symptoms – including those from foot and knee pain and COPD – with evidence that contravenes Plaintiff's account. *See id.* at 20-21. She contests Plaintiff's *Luna* argument and responds that "the ALJ addressed a number of *Luna* factors, including attempts to find relief, effectiveness of medication, and daily activities." *Id.* at 21 (citing *Luna*, 834 F.2d at 165-66). The Commissioner closes by painting Plaintiff's remaining challenged as nothing more than "an argument that the record could be weighed differently[ ] to support a finding of disability. *Id* at 22 (citing Pl.'s Mot. 18-20).

### 1. Credibility evaluation standard

Before March 2016,[5] ALJs were required in crafting an RFC to consider the credibility of a claimant's subjective testimony about pain and other symptoms, and their effect on the claimant's ability to work. *See Madron v. Astrue*, 311 F. App'x 170, 175 (10th Cir. Feb. 11, 2009) (unpublished) (citing SSR 96-7p, 1996 WL 374186, at *6 (July 2, 1996) (*superseded* by SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016)). Precedent provided that "[c]redibility

---

[5] At the time of his decision, SSR 96-7p required that the ALJ assess the credibility of Plaintiff's statements about her symptoms. *See* SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7 has since been superseded by SSR 16-3p, which no longer requires a credibility assessment. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016) ("[W]e are eliminating the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.").

determinations are peculiarly the province of the finder of fact . . . [but], findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (citation and internal quotation marks omitted)).    Furthermore, reviewing courts were not to "upset such determinations when supported by substantial evidence." *Id.*

Under the pre-2016 framework, SSR 96-7p set out the proper two-step analysis of a claimant's subjective testimony.  *See* SSR 96-7p, 1996 WL 374186, at *2.  Under SSR 96-7p, the ALJ was tasked with considering whether there existed "an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms." *Id.*  Second, where the ALJ found such an underlying physical or mental impairment(s), he was then required to "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  *Id.*  In doing so, the ALJ could make a finding on the credibility of a claimant's statements regarding her symptoms based on the entire case record. *Id.*

Alongside SSR 96-7p, the Code of Federal Regulations provided criteria, in addition to the medical evidence in the record, to assist an ALJ in determining whether a claimant's statements of his symptoms were credible.  20 C.F.R. § 404.1529(c) (2017).[6]  These "credibility factors" included:

> (i) a claimant's daily activities; (ii) the location, duration, frequency, and intensity of a claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received for relief of those symptoms; (vi) any measures taken to relieve the pain or other

---

[6] The text of 20 C.F.R. § 1529 was also amended in 2017.  *See* 20 C.F.R. § 404.1529(c) (2017).

symptoms; and (vii) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.

*Id.* § 404.1529(c)(3). Then, where disabling pain is alleged, the Tenth Circuit devised a framework for further analyzing a claimant's subjective testimony regarding pain. These factors, known as the *Luna* factors, require an ALJ to consider:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain is in fact disabling.

*Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992) (citing *Luna*, 834 F.2d at 163-64).

When an ALJ evaluates a claimant's subjective testimony, no formal factor-by-factor review of the evidence is required. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," the credibility determination is to be considered adequately supported. *Id.*

### 2. The ALJ's credibility finding is adequately supported

Plaintiff's final claim is wholly without merit. Although Plaintiff would have this Court believe that the ALJ's credibility finding was "vague," *see* Pl.'s Mot. 18, the Court finds the opposite to be true. The ALJ's credibility discussion was thorough, methodical, and patently supported by substantial evidence. The ALJ began by cataloging each relevant assertion concerning symptoms and pain made by Plaintiff at her hearing. *See* AR 28-29. The ALJ then compared these claims of disabling symptoms to the medical evidence of record. *See* 29-32. In doing so, the ALJ was able to comprehensively demonstrate, *see supra* pp. 8-10, how evidence of record contradicted each of Plaintiff's claims of disabling symptoms and pain. Then, in his

summary of credibility findings, the ALJ gave specific, legitimate reasons for his assessment of Plaintiff's credibility, each of which is closely and affirmatively linked to substantial evidence of record. *See* AR 32-33; *supra* pp. 8-10. *See also Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (holding that an ALJ's credibility determination must be closely and affirmatively linked to substantial record evidence).

Plaintiff's attempt to construct a *Luna* violation is similarly bereft of support. For her part, Plaintiff does little to even *attempt* to persuade the Court, as her argument consists of little more than a parroting of the holding of *Luna*, followed by the patently false assertion that "[t]he ALJ merely stated 'the evidence does not support disabling limitations'" and Plaintiff's belief that this mere statement "is vague." Pl.'s Mot. 18. Even when given the opportunity to clarify in her Reply, Plaintiff only reiterates the *Luna* holding and cites to several medical records that she believes demonstrate that "medication offered only temporary relief" of her foot pain. Pl.'s Reply 5.

This Court is under no obligation to develop an argument where Plaintiff has failed to do so herself. To the extent she has arguably advanced a *Luna* argument, the Court finds it lacking. The ALJ in this case was not required to engage in a factor-by-factor exploration of the *Luna* criteria, and he did not. *See Qualls*, 206 F.3d at 1372. The only relevant pain mentioned by Plaintiff is that in her feet, and the ALJ scrutinized that pain at length. AR 32. As part of that examination, the Commissioner accurately states that "the ALJ addressed a number of *Luna* factors, including attempts to find relief, effectiveness of medication, and daily activities." Def.'s Resp. 21 (citing *Luna*, 834 F.2d at 165-66). Furthermore, the ALJ's discussion of *Luna* factors was linked to specific evidence in the record. *See* AR 32 (citing to medical encounters in June 2013, February 2014, May 2014, October 2014, and November 2014). *See also White v.*

*Barnhart,* 287 F.3d 903, 910 (10th Cir. 2001) (holding that an ALJ need only set forth "the specific evidence he relies on in evaluating a claimant's testimony). Ultimately, based on the available medical and nonmedical evidence, the ALJ reasoned that Plaintiff's pain was not disabling. The Court is mindful that "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White,* 287 F.3d at 909 (citing *Kepler v. Chater,* 68 F.3d 387, 390–91 (10th Cir.1995)). Here, the ALJ's credibility determination is amply supported by substantial evidence and free from any *Luna* error. Therefore, the Court will deny Plaintiff's final claim.

## VI. CONCLUSION

For the reasons articulated above, the Court holds that the ALJ's decision was supported by substantial evidence and the ALJ correctly applied the proper legal standards.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, With Supporting Memorandum [ECF No. 22] is **DENIED.**

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED** and the instant cause is **DISMISSED.**

**IT IS SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***